**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| BRIAN BAKER, *ET AL.*, individually, and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SLT LENDING SPV, INC. d/b/a SUR LA TABLE,<br><br>　　　　Defendant. | Case No.: 2:23-cv-00190-GSL-AZ |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.    INTRODUCTION .................................................................................................. 1

II.   BACKGROUND .................................................................................................... 1

III.  SETTLEMENT DISCUSSIONS .......................................................................... 3

IV.   TERMS OF THE SETTLEMENT ........................................................................ 4

      A.    Notice And Settlement Administration ...................................................... 6

      B.    Opt-Outs and Objections ............................................................................ 7

      C.    Attorneys' Fees And Service Award ........................................................... 8

      D.    Release ........................................................................................................ 8

V.    STANDARD FOR PRELIMINARY APPROVAL ............................................... 8

VI.   THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ...... 9

      A.    The Class Satisfies The Rule 23(A) Certification Prerequisites ................... 9

            1.    Rule 23(A)(1) Numerosity ................................................................. 9

            2.    Rule 23(A)(2) Commonality .............................................................. 10

            3.    Rule 23(A) (3) Typicality .................................................................. 11

            4.    Rule 23(A)(4) Adequacy ................................................................... 12

      B.    The Class Satisfies Rule 23(B) Requirements ............................................. 13

            1.    Rule 23(B)(3) Predominance ............................................................. 13

            2.    Rule 23(B)(3) Superiority ................................................................. 14

VII.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .............. 15

1.    The Settlement Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class. .................................................................................. 17

2.    The Settlement Was Negotiated at Arm's-Length by Vigorous Advocates, and There Has been no Fraud or Collusion..................................................................................... 19

3.    The Settlement Provides Substantial Relief for the Settlement Class. ......................... 19

a.  The Costs, Risks, and Delay of Trial and Appeal Favor Approval of the Settlement. .20

b. The Method of Providing Relief is Effective ..................................................................21

c. The Proposed Award of Attorneys' Fees is Fair and Reasonable. ...................................21

d. There are no Additional Agreements Required to be Identified under Rule 23(e)(3). ...23

e. The Settlement Agreement Treats Settlement Class Members Equitably with Each Other. ...............................................................................................................................23

VIII.    THE COURT SHOULD APPROVE THE FORM AND METHOD OF NOTICE OF THE SETTLEMENT TO THE CLASS .................................................................................. 23

IX.    CONCLUSION ............................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                        **Page(s)**

*AmchemProds., Inc. v. Windsor,*
    521 U.S. 591 (1997) ......................................................................................... 13, 15

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
    616 F.2d 305 (7th Cir. 1980).......................................................................... 16, 18

*Associated Med. Networks, Ltd. V. Lewis,*
    824 N.E.2d 679 (Ind. 2005)..................................................................................... 8

*Birchmeier v. Caribbean Cruise Line, Inc.,*
    896 F.3d 792 (7th Cir. 2018)................................................................................. 22

*Catholic Healthcare W. v. U.S. Foodservice Inc.,*
    729 F.3d 108 (2d Cir.2013) ................................................................................... 13

*Crown, Cork & Seal Co. v. Parker,*
    462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) ............................................. 8

*CV Reit, Inc. v. Levy,*
    144 F.R.D. 690 (S.D. Fla. 1992) ........................................................................... 12

*De La Fuente v. Stokely-Van Camp, Inc.,*
    713 F.2d 225 (7th Cir. 1983)................................................................................. 11

*Gehrich v. Chase Bank USA, N.A.,*
    316 F.R.D. 215 (N.D. Ill. 2016) ........................................................................... 20

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
    No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009) .............. 18

*Gomez v. St. Vincent Health, Inc.,*
    622 F. Supp.2d 710 (S.D. Ind. 2008) ...................................................................... 8

*Grady v. de Ville Motor Hotel, Inc.,*
    415 F.2d 449 (10th Cir. 1969)............................................................................... 20

*Hammond v. The Bank of N.Y. Mellon Corp.,*
    2010 WL 2643307 (S.D.N.Y. June 25, 2010)....................................................... 20

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)............................................................................... 20

*Hapka v. CareCentrix, Inc.,*
    No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) .............. 8, 14

*Hinman v. M and M Rental Center*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ........................................................................ 12

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) .............................................................................. 14

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010) ......................................................................... 16, 20

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................... 18, 19, 22

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) .................................................................................... 21

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................................... 14

*In re Northfield Labs., Inc. Sec. Litig.*,
    No. 06 C 1493, 2012 WL 366852 (N.D. Ill. Jan. 31, 2012).................................. 16, 17

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
    No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) .................................... 18

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .............. 14

*In re TikTok, Inc. Consumer Privacy Litig.*,
    MDL No. 3948, 2021 WL 4478403 (N.D. Ill. Sept. 30, 2021)................................ 12

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996)..................................................................................... 16

*Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307,
    2018 WL 3108884 (N.D. Ill. June 25, 2018) ............................................................ 19

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir.1998)...................................................................................... 12

*Kolinek v. Walgreen Co.*,
    311 F.R.D. (N.D. Ill. 2015) ...................................................................................... 22

*Kusinski v. Macneil Auto. Prod. Ltd.*,
    No. 17-CV-3618, 2018 WL 3814303 (N.D. Ill. Aug. 9, 2018)................................. 22

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................................................................. 24

iv

*Mulvania v. Sheriff of Rock Island Cty.,*
   850 F.3d 849 (7th Cir. 2017)................................................................................ 10

*Muro v. Target Corp.,*
   580 F.3d 485 (7th Cir. 2009)................................................................................ 11

*Oshana v. Coca-Cola Co.,*
   472 F.3d 506 (7th Cir. 2006)................................................................................ 11

*Parker v. Risk Mgmt. Alternatives, Inc.,*
   206 F.R.D. 211 (N.D. Ill. 2002) .......................................................................... 11

*Retired Chi. Police Ass'n v. City of Chi.,*
   7 F.3d 584 (7th Cir. 1993).................................................................................... 12

*Roach v. T.L. Cannon Corp.,*
   778 F.3d 401 (2d Cir. 2015)................................................................................. 13

*Rosario v. Livaditis,*
   963 F.2d 1013 (7th Cir. 1992).............................................................................. 11

*Savanna Group, Inc. v. Trynex, Inc.,*
   No. 20-cv-7995, 2013 WL 66181 (N.D. Ill. Jan. 4, 2013) ................................... 10

*Swanson v. American Consumer Industries, Inc.,*
   415 F.2d 1326 (7th Cir. 1969).............................................................................. 10

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.,*
   463 F.3d 646 (7th Cir. 2006)................................................................................ 19

*Taubenfeld v. Aon Corp.,*
   415 F.3d 597 (7th Cir. 2005)................................................................................ 22

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ........................................................................................ 10

*Williams v. Chartwell Fin. Servs., Ltd.,*
   204 F.3d 748 (7th Cir. 2000)................................................................................ 11

*Wright v. Nationstar Mortg., LLC,*
   2016 WL 4505169 (N.D. Ill. 2016)...................................................................... 21

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... passim

Fed. R. Civ. P. 23(a) .............................................................................................. 9, 13

v

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 9

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 11, 12

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 12

Fed. R. Civ. P. 23(b) ............................................................................................... 13

Fed. R. Civ. P. 23(b)(3) ..................................................................................... passim

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................... 23, 24, 25

Fed. R. Civ. P. 23(c)(2)(C)(iii) ............................................................................... 21

Fed. R. Civ. P. 23(c)(3) ........................................................................................... 25

Fed. R. Civ. P. 23(e) ............................................................................................... 16

Fed. R. Civ. P. 23(e)(1) ........................................................................................... 23

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................... 17

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 17, 21

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................................... 21

Fed. R. Civ. P. 23(e)(3) ..................................................................................... 17, 23

**Other Authorities**

4 *Newberg on Class Actions* (4th ed. 2002) .......................................................... 16, 20

Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C (Aug. 2018) ..................................................... 24

## I.    <u>INTRODUCTION</u>

Plaintiffs Brian Baker, Luann Petrulakis, and Jamelah Elder, individually and as the Class Representatives ("Plaintiffs") hereby submits this memorandum in support of the unopposed motion for preliminary approval of their class action settlement with Defendant SLT Lending SPV, Inc. d/b/a Sur La Table ("SLT" or "Defendant" and, together with Plaintiffs, the "Parties" or "Settling Parties"). The proposed class settlement relates to and resolves all claims arising out of the cybersecurity attack Defendant experienced between March 15, 2023 and March 25, 2023 (the "Data Incident").  The proposed settlement, as set forth in the executed Settlement Agreement attached as Exhibit 1, resolves Plaintiffs' claims on a class-wide basis, is fair, reasonable, and adequate, and satisfies all of the criteria for preliminary approval.

Plaintiffs respectfully request that the Court: (1) conditionally certify the Settlement Class for settlement purposes; (2) name Plaintiffs as Class Representatives; (3) appoints M. Anderson Berry of Clayeo C. Arnold, APC; Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC; and Tyler Bean of Siri and Glimstad LLP as Class Counsel; (4) grant preliminary approval to the Settlement Agreement; (5) approve the proposed Notices to the Class and associated Claims Form and direct their distribution by the third-party Settlement Administrator; (6) set deadlines for Class Members to object or opt out to the Settlement; and (7) schedule a final approval hearing, at which time the Court can consider whether to give final approval to the Settlement.

## II.    <u>BACKGROUND</u>

The case arises from the alleged compromise of personal identifying information ("PII" or "Private Information") of Plaintiffs and Settlement Class Members as a result of the "Data Incident. The Settlement Class consists of current and former employees of Defendant whose

Private Information was allegedly compromised in the Data Incident. In response to the Data Incident, Defendant sent a Notice Letter ("Notice Letter") to approximately 40,646 individuals informing them that certain Private Information may have been involved in the Data Incident. The type of Private Information may have included full names, driver's license numbers or state identification numbers, and/or medical or health information. In addition, for a small portion of these individuals, the type of Private Information involved may have also included Social Security numbers, dates of birth, and health insurance plan enrollment information.

In response, multiple putative class actions were filed in the Northern District of Indiana: *Baker v. SLT Lending SPV, Inc., d/b/a Sur La Table*, No. 2:23-cv-190 (the "*Baker*" action); *Petrulakis v. SLT Lending SPV, Inc., b/d/a Sur La Table*, No. 2:23-cv-202 (the "*Petrulakis*" action); and *Elder v. SLT Lending SPV, Inc. d/b/a Sur La Table, No. 2:23-cv-334* (the "*Elder*" action). On August 7, 2023 the *Baker* and *Petrulakis* matters were consolidated into the first filed matter, and Plaintiff Elder joined the other Plaintiffs in the Consolidated Amended Complaint, filed on October 17, 2023. ECF No. 17 (hereinafter "Complaint").

Plaintiffs, collectively, alleged individually and on behalf of a putative nationwide Class and California Subclass that, as a direct result of the Data Incident, Plaintiffs and Class Members suffered numerous injuries and would likely suffer additional harm in the future.

Plaintiffs, individually and on behalf of other members of the proposed Class and California Subclass, collectively asserted claims for: (i) negligence; (ii) negligence per se; (iii) breach of implied contract; (iv) unjust enrichment; (v) violation of the Drivers' Privacy Protection Act ("DPPA"); (vi) invasion of privacy; (vii) violation of the California Consumer Privacy Act ("CCPA"); (viii) violation of the California Customer Records Act ("CCRA"); (ix) violation of the California Unfair Competition Law ("UCL"); (x) violation of the Illinois Consumer Fraud Act;

and (xi) declaratory judgment.

On May 6, 2024, Defendant filed a Motion to Dismiss the Complaint, which has been fully briefed and is currently pending in this Court. ECF NO. 44. Before the Court ruled on the Motion to Dismiss, the Parties determined that settlement negotiations may be prudent in this matter. Declaration of Gary M. Klinger in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Counsel Dec.") ¶ 27.

### III.    SETTLEMENT DISCUSSIONS

Recognizing the risk and expense of prolonged multidistrict litigation, the parties agreed to pursue informal discovery and settlement negotiations. After Defendant produced informal discovery regarding the class size and mechanism of the Data Incident, the parties engaged in arms-length settlement negotiations over the course of two months. The extended negotiations ultimately resulted in the proposed settlement memorialized in the Settlement Agreement.

The Settling Parties recognize and acknowledge the benefits of settling this case. Plaintiffs believe in the strengths of their claims, nevertheless, Plaintiffs recognize that all litigation has risks, and that they would need to survive the pending motion to dismiss to continue forward in this litigation, and that discovery, class certification proceedings, and trial will be time consuming and expensive for both Parties. *Id.* ¶ 32. Plaintiffs also recognize that potential benefits of early resolution, not the least being that Class Members will receive proper identity theft protections and compensation far sooner. *Id.* ¶ 33. Plaintiffs and their Counsel have, therefore, determined that the Settlement agreed to by the Parties is fair, reasonable, and adequate. *Id.* at ¶ 34.

Defendant maintains that it has a number of meritorious defenses to the claims asserted in this action and denies any and all liability. Ex. 1, Settlement Agreement ("S.A.") ¶ V. Nevertheless, Defendant recognizes the risks and uncertainties inherent in litigation, the significant expense

associated with defending class actions, the costs of any appeals, and the disruption to its business operations. *Id.* Accordingly, Defendant believes that the settlement set forth in the Settlement Agreement is likewise in its best interests and for the purposes of settlement, Defendant does not dispute that the Settlement Class should be certified. *Id.*

## IV.    TERMS OF THE SETTLEMENT

Under the terms of the Settlement, Defendant will fund a non-reversionary Settlement Fund totaling $550,000 in cash. As detailed below, the Settlement Fund will be used to pay for: (1) Out-of-Pocket Loss Payments; (2) Alternative Cash Payments; (3) California Statutory Payments; (4) Identity Protection and Credit Monitoring Services; (5) Cost of Notice and Claims Administration; and (6) Court approved Service Awards and Fee Award and Costs. Settlement Class members may qualify and submit a Claim Form for the following settlement benefits:

a.    <u>Documented Out-of-Pocket Loss Payment</u>: All Settlement Class Members may submit a Claim Form for payment of up to $4,000.00 as compensation for unreimbursed costs or expenditures incurred by a Class Member in responding to notice of the Data Incident. Out-of-Pocket Losses may include, without limitation, the following: (1) costs incurred on or after March 15, 2023, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (2) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges; (3) credit monitoring or other mitigative costs that were incurred on or after March 15, 2023 through the date of the Class Member's Claim submission. S.A. ¶ 2(a)(i).

b.    <u>California Statutory Payment</u>: In recognition of their statutory rights under California's Consumer Privacy Act ("CCPA"), California Class Members may also make a Claim for a cash payment of up to $100. This payment is in addition

to any reimbursement for Out-of-Pocket Losses. *Id*. ¶ 2(B).

    c.    <u>Credit Monitoring Services</u>: All Settlement Class Members are eligible for two (2) years of free identity-theft protection and credit monitoring from one credit bureau. Settlement Class Members must submit a Claim Form before the Claims Deadline to be provided with this benefit. The opportunity for Settlement Class Members to enroll in identity-theft protection and/or credit monitoring services will begin upon the Effective Date of the settlement and will remain available for commencement for 90 days thereafter. Protections provided will include, at a minimum; (1) one bureau credit monitoring, (2) identity restoration and recovery services, and (3) $1,000,000 identity theft insurance with no deductible. Id. ¶ 2.1.

    d.    <u>Alternative Cash Payment:</u> Class Members may, in lieu of making a Claim for reimbursement of Out-of-Pocket Losses, but in addition to a claim for a California Statutory Payment and Identity Protection and Credit Monitoring Services, elect to receive a cash payment the amount of which will be determined *pro rata* to exhaust the Settlement Fund following the payment of any Attorneys' fees, litigation expense reimbursements, service awards, settlement administration costs, as well as all Valid Claims for: Out-of-Pocket loss reimbursements, Identity Theft Protection and Credit Monitoring services, and California Statutory Payments. *Id*. ¶ 2(C).

In addition to the monetary settlement benefits laid out above and in the Settlement Agreement, as a term of the Agreement, for a period of one (1) year following the Effective Date, Defendant agrees to maintain reasonable information security policies ("Business Practice Commitments"). The actual cost for the implementation and maintenance of the Business

Practice Commitments will be paid by Defendant separate and apart from the Settlement Fund. Defendant has provided reasonable access to confidential confirmatory discovery regarding the number of Class Members broken down by category (*e.g.*, current employee, former employee, etc.) and state of residence, the facts and circumstances of the Data Incident and Defendant's response thereto, and the changes and improvements that have been made or are being made to protect Class Members' PII. *Id.* ¶ 2.2.

### A.    Notice And Settlement Administration

The Parties agreed to the appointment of Angeion Group as Settlement Administrator (the "Settlement Administrator"). S.A. ¶ 1.34. The Settlement Administrator will, subject to Court approval, provide notice to the Class in the manner set forth below. The cost of such Notice will be paid from the Settlement Fund. *Id*. ¶ 3.2.

Within forty-five (45) days after the date of the Preliminary Approval Order, the Settlement Administrator will disseminate Notice to all Settlement Class Members. *Id.* ¶ 1.21. Before mailing the Summary Notice, the Settlement Administrator will update the addresses using the National Change of Address database. *Id.* ¶ 3.2(d). In the event that a Short Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Short Notice to the forwarding address. *Id.* For any Summary Notice that was returned by the U.S. Postal Service as undeliverable without forwarding address information, the Settlement Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the Class Member's current address. *Id*. Prior to the date on which the Settlement Administrator initiates the Notice, the Settlement.

The Settlement Administrator shall establish the Settlement Website. *Id.* ¶ 3.2(c). The Settlement will inform Class Members of the terms of this Settlement Agreement, their rights, dates and deadlines and related information, offer the option to download relevant documents, provide Class Members with the ability to complete and submit the Claim Form, as well as the option to send an email with additional questions to the Settlement Administrator. *Id.*

### B.    Opt-Outs and Objections

Class Members may opt-out of the Settlement by timely submitting, by U.S. Mail, a Request for Exclusion to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Date. *Id.* ¶ 4.1. The Request for Exclusion must be postmarked on or before the Opt-Out Date. *Id* ¶ 4.1.

Class Members may also object to the Settlement or Fee Application by submitting written objections to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline. *Id* ¶ 5.1. Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) the case name and docket number, *Brian Baker et al. v. SLT Lending SPV, Inc. d/b/a Sur La Table*, Case No. 2:23-cv-00190-GSL-AZ; (iii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (*e.g.*, copy of the objector's Settlement Notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes they are a Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or their counsel will appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing

him or her in connection with the objection. *Id.*

### C.    **Attorneys' Fees And Service Award**

Class Counsel will file, and Defendant agrees not to challenge, a Fee Application seeking an award of attorneys' fees up to $183,333.33 (33.33% of the Settlement Fund) to be paid from the Settlement Fund, litigation costs and expenses of up to $10,000, and a Service Award of $2,000 to each Settlement Class Representative. *Id.* ¶¶ 7.2, 7.3.

### D.    **Release**

In exchange for the relief described above, Class Members who do not opt-out of the Settlement will fully release SLT for all claims and causes of action pleaded or that could have been pleaded that are related in any way to the activities stemming from the Data Breach. Counsel Dec. ¶ 38.

## V.    **STANDARD FOR PRELIMINARY APPROVAL**

"The principal purpose of class action certification is 'promotion of efficiency and economy of litigation.'" *Gomez v. St. Vincent Health, Inc.,* 622 F. Supp.2d 710, 717 (S.D. Ind. 2008) (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). "The trial court has broad discretion in determining whether an action is maintainable as a class action . . . ." *Associated Med. Networks, Ltd. V. Lewis,* 824 N.E.2d 679, 682 (Ind. 2005). Where a class is proposed in connection with a motion for preliminary approval, similar to the Federal Rules of Civil Procedures provide that a court must ensure the requirements of Rule 23 have been met.

Courts routinely certify settlement classes in data breach cases, and there is no reason why this case should be different. *See, e.g.*, *In re Zappos Sec. Breach Litig.*, No. 12-00325, ECF No. 335 (D. Nev. Sept. 19, 2019); *Hapka v. CareCentrix, Inc.,* No. 16-02372, ECF No. 91 (D. Kan.

Sept. 29, 2017); *Sackin v. Transperfect Global, Inc.*, No. 17-1469, ECF No. 55 (S.D.N.Y. Mar. 13, 2018); *In re Yahoo! Inc. Customer Data Breach Sec. Litig.*, Case No. 16-02752, ECF No. 390 (N.D. Cal. 2019); *Castillo v. Seagate Tech., LLC,* No. 16-cv-01958, ECF No. 76 (N.D. Cal. Oct. 19, 2017).

## VI.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

Pursuant to the Settlement and Rules 23(A) and 23(B)(3), the Court should certify the following Settlement Class: all individuals to whom Defendant sent notice of the Data Incident on or around May 24, 2023. S.A. ¶ 1.8. The Settlement also consists of a California Subclass defined as "all California residents to whom Defendant sent notice of the Data Incident on or around May 24, 2023." S.A. ¶ 1.4. For avoidance of doubt, the Settlement Class includes the California Subclass. The Settlement Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this Settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id*.

As Defendant agrees, for purposes of settlement, the Class meets the four requirements of Rule 23(A) (numerosity, commonality, typicality, and adequacy) and the two requirements of Rule 23(B)(3) (predominance and superiority).

### A.    The Class Satisfies The Rule 23(A) Certification Prerequisites

#### 1.    Rule 23(A)(1) Numerosity

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(A)(1).  While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."

*Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017). *See also Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333, n.9 (7th Cir. 1969) (similar); *Savanna Group, Inc. v. Trynex, Inc.*, No. 20-cv-7995, 2013 WL 66181, *4 (N.D. Ill. Jan. 4, 2013) (similar).

Here, the Class consists of thousands of current and former employees of SLT, individuals who, as a result of the Data Breach, had their Personal Information compromised. Thus, numerosity is met because joinder of thousands is plainly impracticable.

### 2.    Rule 23(A)(2) Commonality

Commonality is satisfied where common questions are capable of generating "common answers apt to drive the resolutions of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556.

Here, commonality is satisfied because the circumstances of each particular Settlement Class Member retain a common core of factual or legal issues with the rest of the Settlement Class, regardless of whether the individual is a member of the Settlement Class or both the Settlement Class and the California Settlement Subclass. Plaintiffs' claims center on whether Defendant failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members. For example, issues common to all Settlement Class and Settlement Subclass Members include:

- Whether Defendant owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding Plaintiffs' and Settlement Class Members' Private Information;

- Whether Defendant knew or should have known that it allegedly did not employ reasonable measures to keep the Private Information of Plaintiffs' and Settlement Class Members' secure; and

10

- Whether Defendant violated the law by allegedly failing to promptly notify Plaintiffs and Settlement Class Members that their Private Information had been potentially compromised.

These common questions, and others alleged by Plaintiffs in their Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis because they all tie back to the same common nucleus of operative facts—the Data Incident and Defendants' data protection measures. *See Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement"). Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3.    Rule 23(A) (3) Typicality

To satisfy the typicality requirement, "'the claims or defenses of the representative party [must] be typical of the claims or defenses of the class.'" *Muro v. Target Corp*., 580 F.3d 485, 492 (7th Cir. 2009) (*quoting Williams v. Chartwell Fin. Servs., Ltd*., 204 F.3d 748, 760 (7th Cir. 2000)). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006) (*quoting Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "Although 'the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members,' the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro,* 580 F.3d at 492 (*quoting De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)). Put another way, where the defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that

conduct," typicality is "generally met." *Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806-07 (N.D. Ill. 2008) (*citing, e.g., Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998)).

Here, Plaintiffs satisfy the typicality requirement because their claims share common essential characteristics with those of the Class. Plaintiffs, like other Class Members, entrusted Defendant with their sensitive Private Information as a condition of employment or receiving medical care. Plaintiffs Private Information was compromised as a result of the Data Incident. The same is true for the thousands of individuals comprising the proposed Settlement Class. Thus, the Class Representatives' claims, and the claims of the Class Members, arise from the same alleged illegal and wrongful conduct of the Defendant and rest upon common legal theories. Plaintiffs and Class Members' claims arise out of SLT's "single course of conduct." Plaintiffs' claims are completely aligned with the members of the Class whom the Class Representatives seek to represent. Because of these similarities, Plaintiffs satisfy the typicality requirement of Fed. R. Civ. P. 23(A)(3).

### 4.    Rule 23(A)(4) Adequacy

The test for evaluating adequacy of representation under Rule 23(a)(4) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc. Consumer Privacy Litig*. MDL No. 3948, 2021 WL 4478403, at * 7 (N.D. Ill. Sept. 30, 2021) (*quoting CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *Retired Chi. Police Ass'n v. City of Chi*., 7 F.3d 584, 598 (7th Cir. 1993). Here, the Settlement Class Representatives and Settlement Class Counsel meet the test of adequacy.

First, there is no conflict between Plaintiffs and the Settlement Class Members. Plaintiffs were allegedly harmed in the same way as all Settlement Class Members when Defendants

allegedly failed to adequately secure their Private Information. Plaintiffs and all Settlement Class and California Subclass Members seek relief for injuries arising out of the same Data Incident. In light of this common event and injury, the named Plaintiffs have every incentive to vigorously pursue the putative Class claims and no conflict exists.

Further, Settlement Class Counsel are qualified to represent the Settlement Class. They have extensive experience in data privacy and consumer class actions. *See* Counsel Decl., ¶¶ 2-24. The results obtained by this settlement confirm Settlement Class Counsel's adequacy. Thus, the requirements of Rule 23(a) are satisfied.

### B.     The Class Satisfies Rule 23(B) Requirements

Rule 23(b)(3) allows for certification only where (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.     Rule 23(B)(3) Predominance

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (*quoting Catholic Healthcare W. v. U.S. Foodservice Inc.*, 729 F.3d 108, 118 (2d Cir.2013)) (internal quotation marks omitted). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation*." Amchem,* 521 U.S. at 623. Further, when a settlement class is proposed, the manageability criteria of Rule 23(b)(3) do not apply. *Id.* at 620.

In this case, the key predominating questions are whether Defendant had a duty to exercise

reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and the Settlement Class, and whether Defendant breached that duty. The common questions that arise from Defendant's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 312-15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.,* No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case because "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.,* No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland,* 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Thus, this case meets the requirement of predominance.

### 2.    Rule 23(B)(3) Superiority

Because the claims are being certified for purposes of settlement, there are no issues with

manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Class treatment presents a superior channel for fairly resolving similar issues and claims without repetitious and wasteful litigation. The proposed class action is the surest way to fairly and expeditiously compensate thousands of Class Members while preventing the inundation of courts with repetitive cases and conserving the resources of the Court and the Parties. Additionally, the proposed class action ensures the maximization of Class Members' potential compensation and providing finality to the Defendant.

Here, a class-wide resolution of thousands of Class Members' claims can clearly be achieved using generalized rather than individualized proof because the Private Information of all Class Members may have been exposed as a result of the same data breach and all Class Members' claims will rise and fall through the application of the same law to the same facts. Thus, the core issues that entirely govern the outcome of this case are common to each and every Class Member. Hence, a class action is the superior method of adjudicating the present claims for all parties. Consequently, Class Members need not bring individual actions to obtain relief and Defendant can resolve all Class Members' claims through the Settlement. For these reasons, the superiority requirement of Rule. 23(B)(3) is satisfied.

The proposed Settlement Class meets each of the elements of certification and satisfies the requirements of Rule 23 and therefore, the Class should be certified.

## VII.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

As the Seventh Circuit has recognized, federal courts strongly favor and encourage

settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of complex disputes often involved in class action minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes on already scarce judicial resources.

> *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class-action settlement may be approved if the settlement is "fair, reasonable, and adequate." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). "Approval of a class action settlement is a two-step process." *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012) (citing *In re AT&T*, 270 F.R.D. at 346). "First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved." *Id*. "If the court preliminarily approves the settlement, the class members are notified." *Id*.

Rule 23 – and particularly the portions thereof dealing with settlement – was amended in December 2018. The first step in the amended process is a preliminary fairness determination: the new Rule calls for front-loaded scrutiny of a proposed settlement so that any issues are identified *before* notice goes out to the class. The new Rule 23(e) states that grounds exist for class notice

where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, where, as here, the proposed settlement would bind class members, it may only be approved after a final hearing and a finding that it is fair, reasonable, and adequate, based on the following factors:

    A.  The class representative and class counsel have adequately represented the class;

    B.  The proposal was negotiated at arm's length;

    C.  The relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

    D.  The proposal treats Class Members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). If the court preliminarily finds that the settlement is fair, adequate, and reasonable, it then "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." Fed. R. Civ. P. 23(e)(1)(B).

The second step in the process, occurring only after notice has issued to the class, is a final fairness hearing. Fed. R. Civ. P. 23(e)(2); *In re Northfield Labs.*, 2012 WL 366852, at *5 ("Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members."). As explained below, consideration of the relevant factors supports preliminarily approving the Settlement Agreement and issuing notice.

        **1.**    **The Settlement Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class.**

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. Indeed, there is an "overriding public interest in favor of settlement," particularly in class actions that have the well-

deserved reputation as being most complex. *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016); see also Armstrong, 616 F.2d at 313. This matter is no exception.

Here, the Parties entered into the settlement only after both sides were fully apprised of the facts, risks, and obstacles involved with protracted litigation. *See* Counsel Decl., ¶ 28. At the outset of their investigation, Settlement Class Counsel conducted extensive research regarding Plaintiffs' claims, Defendant, and the Data Incident. *Id*., ¶ 30. Defendant also filed a motion to dismiss, which has been fully briefed and is still pending in this matter. Class Counsel then requested, and Defendant produced, informal discovery necessary to engage in informed discussions about class resolution. *Id. See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 793 (N.D. Ill. 2015) (granting preliminary approval to privacy class settlement where the parties exchanged discovery over a six-month period and then mediated the case to reach a settlement). The parties then spent months negotiating the material terms of a class settlement, and then an several additional months finalizing the full settlement agreement. *Id.,* ¶ 31.

In addition, the adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign, Inc. v. Finish Thompson, Inc*., No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, at *15-*16 (N.D. Ill. Aug. 20, 2009). Here, as discussed *supra*, the Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. They thus have every incentive to vigorously pursue the claims of the Settlement Class, as they have done to date by remaining actively involved in this matter since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. Counsel Decl., ¶ 43. Further, Plaintiffs retained qualified and competent

counsel with extensive experience in litigating consumer class actions, and privacy actions in particular. *See, e.g.*, *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *8 (N.D. Ill. June 25, 2018).

In a case where experienced counsel represent the class, the Court "is entitled to rely upon the judgment of the parties' experienced counsel." *In re Capital One TCPA Litig.*, 80 F. Supp. 3d at 792 ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Here, Plaintiffs' counsel believe that the Parties' settlement is fair, reasonable, and adequate, and in the best interests of the members of the Settlement Class. Counsel Decl., ¶ 34. Plaintiffs' Counsel also believes that the benefits of the Parties' settlement far outweigh the delay and considerable risk of proceeding to trial. *Id.* ¶ 32.

### 2. The Settlement Was Negotiated at Arm's-Length by Vigorous Advocates, and There Has been no Fraud or Collusion.

Here, the Settlement Agreement resulted from good-faith, arms'-length settlement negotiations over many months, resulting in the Settlement Agreement before the Court. Counsel Decl., ¶ 28. Accordingly, it is clear that that the Parties negotiated the Settlement Agreement at arm's length and absent any fraud or collusion. This factor thus weighs in favor of preliminary approval.

### 3. The Settlement Provides Substantial Relief for the Settlement Class.

The Settlement Agreement provides for substantial relief, especially considering the costs, risks, and delay of trial, the effectiveness of distributing relief, and the proposed attorneys' fees. "The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is

19

compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT&T*, 270 F.R.D. at 347. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Newberg on Class Actions*, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial . . . " *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). It is also, in part, because "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("The essential point here is that the court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise.").

        a.   *The Costs, Risks, and Delay of Trial and Appeal Favor Approval of the Settlement.*

The value achieved through the Settlement Agreement here is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendants will assert a number of potentially case-dispositive defenses. In fact, should litigation continue, Plaintiffs would likely have to immediately survive Defendant's fully briefed motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that

would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013). Moreover, due to the quickly evolving nature of case law pertaining to data protection, it is likely that a win by any party will result in appeals, which will further increase costs and extend the time until Plaintiffs and Settlement Class Members can have a chance at relief.

Plaintiffs dispute the defenses Defendants are likely to assert, but it is obvious that their likelihood of success at trial is far from certain. "In light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright v. Nationstar Mortg., LLC*, 2016 WL 4505169, at *10 (N.D. Ill. 2016).

### b. The Method of Providing Relief is Effective

"[T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Committee Note to the 2018 amendments to Rule 23(e)(2) says that this factor is intended to encourage courts to evaluate a proposed claims process "to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

### c. The Proposed Award of Attorneys' Fees is Fair and Reasonable.

"[T]he terms of any proposed award of attorneys' fees, including timing of payment," are also factors in considering whether the relief is adequate. Fed. R. Civ. P. 23(c)(2)(C)(iii). Plaintiffs' counsel will seek an award of attorneys' fees of at or below 33.33% of the Settlement Fund, or

approximately $183,333.33, and litigation expenses of $10,000 or less.[1] This percentage fee requested falls well within the range of other approved class settlements, including privacy class settlements. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. at 501 (N.D. Ill. 2015) (awarding 36% of net settlement fund in class settlement); *Martin v. JTH Tax, Inc.* No. 13-cv-6923, ECF No. 85 (N.D. Ill. Sept. 16, 2015) (awarding fees of 38% of net settlement fund in class settlement); *Kusinski v. Macneil Auto. Prod. Ltd.*, No. 17-CV-3618, 2018 WL 3814303, at *1 (N.D. Ill. Aug. 9, 2018) ("The Court authorizes 1/3 of the Gross Settlement Fund") *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (affirming post-*Pearson* fee award in TCPA class action that included, *inter alia*, "the sum of 36% of the first $10 million"); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (same); *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 600 (7th Cir. 2005) (noting table of 13 cases in the Northern District of Illinois submitted by class counsel showing fees awarded ranged from 30% to 39% of the settlement fund); *Karpilovksy v. All Web Leads, Inc.*, 17-cv-01307, ECF No. 173 (N.D. Ill. Aug. 8, 2019) (approving fees of 35% of the settlement fund). Plaintiffs' counsel achieved an excellent result for the Settlement Class after undertaking substantial risk in bringing this action on a pure contingency basis, and they should be fairly compensated.

Prior to final approval, Plaintiffs' counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request, and the anticipated fee request will likewise be stated in the Settlement Class Notice. At this stage of the settlement, the requested fees and costs are clearly within the range of possible approval and support preliminary approval of the Settlement Agreement.

---

[1] Plaintiffs will file a complete petition for fees, costs, and service awards by separate filing prior to the deadline for Settlement Class Members to object to or exclude themselves from the Settlement Agreement.

> *d. There are no Additional Agreements Required to be Identified under Rule 23(e)(3).*

No additional agreements requiring identification exist, this factor does not weigh either in favor of or against preliminary approval.

> *e. The Settlement Agreement Treats Settlement Class Members Equitably with Each Other.*

Here, the proposed Settlement Agreement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class Members will be eligible to make a Claim for an Out-of-Pocket Loss Payment or an Alternative Cash Payment, as well as Identity Protection and Credit Monitoring Services. California Subclass Members will also have the opportunity to claim a California Statutory Payment, which is warranted because California Settlement Subclass Members have additional and valuable California state claims.

Importantly, direct notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the settlement. And while Plaintiffs will be seeking a $2,000 service award for their services on behalf of the Settlement Class, this award is significantly less than the amount that any given Settlement Class Member can claim in reimbursements and thus does not create any improper motivation to settle or give rise to undue inequities across the Settlement Class.

Accordingly, this factor also weighs in favor preliminary approval.

## VIII.  THE COURT SHOULD APPROVE THE FORM AND METHOD OF NOTICE OF THE SETTLEMENT TO THE CLASS

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). The notice provisions of Rule 23 were amended because means of communication have evolved, and permitting notice by electronic means, including e-mails, digital media, and social media, may provide the best practicable notice under the circumstances. Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 17-18.23 (Aug. 2018). Specifically, the amended language expressly provides that notice can be made by one or a combination of means, including "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

The Committee Note to Rule 23 advises: "Counsel should consider which method or methods of giving notice will be most effective; simply assuming that the 'traditional' methods are best may disregard contemporary communication realities." Duke L. Bolch Jud. Inst., *Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions*, app. C at 19 (Aug. 2018). Consistent with that directive, counsel for the Parties and the Claims Administrator have carefully considered cost, customer preference, and effectiveness in determining the best practicable means of communicating the settlement benefits and rights of exclusion (among other matters) to the Settlement Class.

Here, the Settlement Administrator will first send Notice to the Settlement Class via direct notice to the addresses provided by Defendant. S.A. ¶ 3.2(a). Prior to mailing, addresses will be run through the National Change of Address database and updated. *Id.* ¶ 3.2(d). Short Notices returned with forwarding addresses will be forwarded, and those returned with no forwarding address will be resent to any valid address found after performing a skip trace. *Id.* The Settlement

24

Administrator will also create and maintain a Settlement Website where Settlement Class Members can view relevant documents, submit their Claim Forms, or get answers to frequently asked questions. *Id*. ¶ 3.2(c). In addition to the direct Notice and Settlement Website, the Claims Administrator will also maintain a dedicated toll-free help line with an interactive voice response, to provide Settlement Class Members with additional information they may need. *Id.*, ¶ 3.2(f).

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). This information is included both the Long Notice and Short Notice in language that is easy to understand. *See* S.A., Exs. B, D.

Because the class notice and notice plan set forth in the Settlement Agreement satisfy the requirements of due process and Federal Rule of Civil Procedure 23 and provide the best notice practicable under the circumstances, the Court should direct the Parties and the Claims Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and its order granting preliminary approval.

## IX.    <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court (1) conditionally approve the Parties' Settlement Agreement as fair, adequate, reasonable, and within the reasonable range of possible final approval, (2) appoint Plaintiffs as the Class Representatives, (3) appoint Plaintiffs' counsel as Class Counsel, (4) provisionally certify the Settlement Class under Federal Rule of Civil

Procedure 23(b)(3) and (e) for settlement purposes only, (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23, (6) set deadlines for Settlement Class Members to submit claims for compensation, objections and requests for exclusion, and (7) set a date for a final approval hearing.

Dated: February 14, 2025                    Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

M. Anderson Berry
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829
aberry@justice4you.com

Kathleen A. Delaney (#18604-49)
**Delaney & Delaney LLC**
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
kathleen@delaneylaw.com

Mason Barney
Tyler Bean
**Siri & Glimstad LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: 212.532.1091
tbean@sirillp.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 14, 2025 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Gary M. Klinger*
Gary M. Klinger
