**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| BRIAN BAKER, *et al.*, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>SLT LENDING SPV, INC. d/b/a SUR LA TABLE,<br><br>      Defendant. | Case No.: 2:23-cv-00190-GSL-AZ |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION. .................................................................................................... 1

II.    SETTLEMENT TERMS ......................................................................................... 2

  A.    The Settlement Class ......................................................................................... 2

  B.    Class Member Benefits under the Settlement .................................................. 3

III.    THE NOTICE PROGRAM ...................................................................................... 5

IV.    CLASS RESPONSE AND CLAIMS ....................................................................... 7

V.    LEGAL ARGUMENT ............................................................................................. 8

  A.    Final Class Certification for Settlement Purposes is Appropriate ................... 8

  B.    The Rule 23(a) Requirements Remain Satisfied. ............................................. 9

  C.    The Rule 23(b)(3) Requirements Remain Satisfied. ...................................... 10

  D.    The Settlement Agreement Warrants Final Approval. ................................... 12

    a.  Fed. R. Civ. P. 23(e)(2)(A): Class Representatives & Class Counsel have Adequately Represented the Settlement Class. ...................................................................... 13

    b.    Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length ............ 14

    c.    Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief. ................... 15

      1. Fed. R. Civ. P. 23(e)(2)(C)(i): the Costs, Risk, and Delay of Trial and Appeal Favor Final Approval ......................................................................................... 15

      2. Fed. R. Civ. P. 23(e)(2)(C)(ii): Method of Providing Relief is Effective. ................... 17

      3. Fed. R. Civ. P. 23(e)(2)(C)(iii): Proposed Award of Attorneys' Fees is Fair and Reasonable ......................................................................................... 18

      4. Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements. ...................................... 18

    d.  Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably. ........................................................................................ 19

VI.    CONCLUSION ...................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................................................................. 19

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................................... 11

*Brinker Data Incident Litig.*,
   No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ........................... 16

*Day v. Check Brokerage Corp.*,
   240 F.R.D. 414 (N.D. Ill. 2007) ...................................................................................... 11

*Green-Cooper v. Brinker Int'l, Inc.*,
   73 F.4th 883 (11th Cir. 2023) ......................................................................................... 16

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   2013 WL 1287054 (S.D. Ill. Mar. 28, 2013) ...................................................................... 13

*Hashemi v. Bosley, Inc.*,
   2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) .................................................................. 15

*Hayes v. Thor Motor Coach, Inc.*,
   No. 3:19-CV-375 DRL-MGG, 2022 WL 4137227 (N.D. Ind. Jan. 13, 2022) ......................... 12

*Hinman v. M and M Rental Center*,
   545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................................... 10

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) .................................................................................. 7, 8

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ...................................................................................... 15

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
   2024 WL 2155221 (D.S.C. May 14, 2024) ........................................................................ 16

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   No. 18-CV-8472 (PKC), 2022 WL 2063864 (S.D.N.Y. June 8, 2022) ...................................... 8

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
   No. 19-MD-2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023) .............................................. 17

*In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*,
   No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) .................................................. 16

*In re Marriott Int'l, Inc.*,
  78 F.4th 677 (4th Cir. 2023) .................................................................................. 17

*In re Mexico Money Transfer Litig.*,
  164 F.Supp.2d 1002 (N.D. Ill. 2000) ........................................................................ 8

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  No. 14-md-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) ................................ 7

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) .................................................................... 10

*In re TikTok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) ................................................................... 9, 11

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) .............................................................................. 19

*Mulvania v. Sheriff of Rock Island Cty.*,
  850 F.3d 849 (7th Cir. 2017) .................................................................................... 9

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) .................................................................................. 10

*Steele v. GE Money Bank*,
  No. 1:08-CIV-1880, 2011 WL 13266350 (N.D. Ill. May 17, 2011) ........................ 14

*Swanson v. American Consumer Industries, Inc.*,
  415 F.2d 1326 (7th Cir. 1969) .................................................................................. 9

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) .................................................................................. 14

*T.K. Through Leshore v. Bytedance Tech. Co.*,
  2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ............................................................ 13

*Theus v. Brinker Int'l, Inc.*,
  No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025) .......... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ............................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................. 9

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) .................................................................................. 12

## Rules

Fed. R. Civ. P. 23 ................................................................................................ 7, 9

Fed. R. Civ. P. 23(a) ........................................................................................... 8, 9

Fed. R. Civ. P. 23(a)(1) .......................................................................................... 9

Fed. R. Civ. P. 23(a)(3) .......................................................................................... 9

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 10

Fed. R. Civ. P. 23(b) .............................................................................................. 8

Fed. R. Civ. P. 23(b)(3) ............................................................................. 10, 11, 12

Fed. R. Civ. P. 23(e) ......................................................................... 1, 17, 18, 19

Fed. R. Civ. P. 23(e)(1)(C) ................................................................................... 12

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 12

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................................... 15

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................................................ 17, 18

Fed. R. Civ. P. 23(e)(2)(C)(iii) ............................................................................. 18

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................................. 18

Fed. R. Civ. P. 23(e)(2)(D) ................................................................................... 18

Fed. R. Civ. P. 23(e)(3) ........................................................................................ 12

Fed. R. Civ. P. 23(f) ............................................................................................. 16

## Other Authorities

2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011) ................................................ 14

Manual for Complex Litigation (Fourth) § 13.12 (2004) ........................................... 13

Pursuant to Federal Rule of Civil Procedure Rule 23(e), Plaintiffs Brian Baker, Luann Petrulakis, and Jamelah Elder, individually and as Class Representatives ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, respectfully move this Honorable Court for final approval of the proposed settlement of this class action lawsuit. Defendant, through counsel, does not oppose this Motion.[1]

## I. **INTRODUCTION.**

On February 20, 2025, this Court preliminarily approved a proposed class action settlement between Plaintiffs and Defendant SLT Lending SPV, Inc. d/b/a Sur La Table ("SLT" or "Defendant" and together with Plaintiffs, the "Parties"). *See* Doc. 60. Class Counsel's efforts created distinct monetary benefits for the approximately 40,637 Settlement Class Members in the form of a $550,000 non-reversionary common fund from which Settlement Class Members can (i) claim reimbursement for documented Out-of-Pocket Losses up to $4,000.00; (ii) submit a claim for two years of one-bureau credit monitoring; (iii) claim a $100 California Statutory Payment if eligible as a California Class Member; and; (iv) receive a *pro rata* share of the amounts remaining in the Settlement Fund after all costs and expenses are paid, in lieu of out-pocket losses. Settlement Class Members will further benefit from equitable relief in the form of Defendant maintaining reasonable information security policies ("Business Practice Commitments") for a period of one-year after the Effective Date.

The Settlement involved a comprehensive notice program and user-friendly claims process which has been (and continues to be) implemented by the Claims Administrator,  Angeion Group, LLC ("Angeion"). *See* Declaration of Jennifer Beliveau re: Notice and Administration ("Angeion

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definition as set forth in the Settlement Agreement ("S.A."), filed on February 14, 2025 (Doc. 59-1).

Decl."), ¶¶ 6-13 (attached hereto as **Exhibit 1**). The deadline to submit a claim was July 7, 2025. *Id*. ¶ 14. The Court-approved notice program provided direct notice by U.S. mail, the creation of a toll-free telephone number to answer Settlement Class Members' questions, and the creation of a Settlement Website. *Id*. ¶¶ 8-13.

The reaction from Settlement Class Members has been overwhelmingly positive and strongly supports final approval. The deadline to file objections or to request exclusion was June 5, 2025. *Id*. ¶¶ 15-16. No Settlement Class Member has objected and only one has timely requested exclusion. *Id*.[2] The deadline to submit a claim was July 7, 2025, and 1,218 claims were received from the 40,637 Settlement Class Members identified after de-duplication and to whom notice was mailed. *Id*. ¶ 14. This works out to a claims rate of 2.997 percent. This claims rate already exceeds the claims rate of many other finally approved data breach settlements across the nation. Considering the valuable benefits conveyed to Settlement Class Members, and the significant risks they would face through continued litigation, the Settlement is fair, reasonable, and adequate, and merits final approval.[3]

## II.  SETTLEMENT TERMS

### A.  The Settlement Class

The Settlement and Preliminary Approval Order (Doc. 60) provide for a for a Settlement Class defined as follows:

> All individuals to whom Defendant sent notice of the Data Incident on or around May 24, 2023 (the "Class").

---

[2] There was a second, untimely request for exclusion, but pursuant to the terms of the Settlement, that person's exclusion request is denied by the Parties for untimeliness.

[3] In the interest of judicial efficiency, for the factual and procedural background of the proposed Settlement, Plaintiffs respectfully refer the Court to, and hereby incorporate by reference, the case summary and procedural history in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support, filed on February 14, 2025 and Motion for Attorneys' Fees, Costs, and Service Awards filed on May 22, 2025. *See* Docs. 59 and 62.

S.A. ¶ 1.8. The Settlement Agreement also provides for a California subclass defined as follows:

> All California residents to whom Defendant sent notice of the Data Incident on or around May 24, 2023.

S.A. ¶ 1.4. Specifically excluded from the Settlement Class and Subclass are: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this Settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. S.A. ¶ 1.8.

### B. Class Member Benefits under the Settlement

Under the terms of the Settlement, Defendant will fund a non-reversionary Settlement Fund totaling $550,000 in cash. As detailed below, the Settlement Fund will be used to pay for: (1) Out-of-Pocket Loss Payments; (2) Alternative Cash Payments; (3) California Statutory Payments; (4) Identity Protection and Credit Monitoring Services; (5) Cost of Notice and Claims Administration; and (6) Court approved Service Awards and Fee Award and Costs. Settlement Class members may qualify and submit a Claim Form for the following settlement benefits:

   a. <u>Documented Out-of-Pocket Loss Payment</u>: All Settlement Class Members could submit a Claim Form for payment of up to $4,000.00 as compensation for unreimbursed costs or expenditures incurred by a Class Member in responding to notice of the Data Incident. S.A. ¶ 2(a)(i).

   b. <u>California Statutory Payment</u>: In recognition of their statutory rights under California's Consumer Privacy Act ("CCPA"), California Class Members could also make a Claim for a cash payment of up to $100. This payment is in addition to any reimbursement for Out-of-Pocket Losses. *Id*. ¶ 2(B).

   c. <u>Credit Monitoring Services</u>: All Settlement Class Members were eligible

for two (2) years of free identity-theft protection and credit monitoring from one credit bureau. Settlement Class Members must submit a Claim Form before the Claims Deadline to be provided with this benefit. Protections provided will include, at a minimum; (1) one bureau credit monitoring, (2) identity restoration and recovery services, and (3) $1,000,000 identity theft insurance with no deductible. *Id.* ¶ 2.1.

d.  <u>Alternative Cash Payment:</u> Class Members could, in lieu of making a Claim for reimbursement of Out-of-Pocket Losses, but in addition to a claim for a California Statutory Payment and Identity Protection and Credit Monitoring Services, elect to receive a cash payment the amount of which will be determined *pro rata* to exhaust the Settlement Fund following the payment of any Attorneys' fees, litigation expense reimbursements, service awards, settlement administration costs, as well as all Valid Claims for: Out-of-Pocket loss reimbursements, Identity Theft Protection and Credit Monitoring services, and California Statutory Payments. *Id.* ¶ 2(C).

In addition to the monetary settlement benefits laid out above and in the Settlement Agreement, as a term of the Agreement, for a period of one (1) year following the Effective Date, Defendant agrees to maintain reasonable information security policies ("Business Practice Commitments"). The actual cost for the implementation and maintenance of the Business Practice Commitments will be paid by Defendant separate and apart from the Settlement Fund. Defendant has provided reasonable access to confidential confirmatory discovery regarding the number of Class Members broken down by category (*e.g.*, current employee, former employee, etc.) and state

of residence, the facts and circumstances of the Data Incident and Defendant's response thereto, and the changes and improvements that have been made or are being made to protect Class Members' PII. *Id.* ¶ 2.2.

## III.    THE NOTICE PROGRAM.

The Court appointed Angeion as Claims Administrator, charged with disseminating class notice and administering the Settlement. Doc 60, ¶ 6. In accordance with the Court's directive, Angeion employed direct notice to individual Settlement Class Members that has been highly effective.

On or about February 26, 2025, Angeion received a data file from Defense Counsel, containing the contact information for 40,646 Class Members. Angeion Decl. ¶ 7. Angeion reviewed the data file and removed duplicative records, resulting in 40,637 unique records ("Class List"). *Id*. This means that there are 40,637 Settlement Class Members.

On April 4, 2025, Angeion caused the Short Notice ("Postcard Notice") to be mailed via the United States Postal Service ("USPS") first-class mail, postage prepaid, to 40,637 Settlement Class Members ("Mailing List"). Angeion Decl. ¶ 8. Prior to mailing, the Mailing List was processed through the USPS National Change of Address database to identify updated addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS. *Id*. ¶ 9. Postcard Notices that were returned by the USPS as undeliverable with a forwarding address were re-mailed to that forwarding address. Postcard Notices that were returned by the USPS without a forwarding address were subjected to an address verification search ("skip trace") in an attempt to locate an updated address. *Id*. ¶ 10. As a result of the above-described efforts, of the 5,862 Postcard Notices returned as undeliverable by the USPS, 5,774 were re-mailed to updated addresses. *Id.*

Based on these numbers, 40,549 Settlement Class Members presumptively received direct notice.[4] As a result, Angeion successfully delivered direct notice via the Postcard Notices to 99.78% of the Class Members. *Id*. ¶ 11. This reach rate is consistent with other court-approved, best-practicable notice programs and is in excess of Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign.[5]

In addition to the direct mailed notice, on April 4, 2025, Angeion activated a case-specific website, www.SLTDataSettlement.com (the "Settlement Website"), where Settlement Class Members are able to file a claim directly on the website or download and print the Claim Form to be completed and mailed via the USPS in English and Spanish. *Id*. ¶ 12. Also on the Settlement Website, Settlement Class Members can easily view general information about this class action Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. *Id*. This case-specific Settlement Website was designed to be user-friendly and makes it easy for Class Members to find information about the case. The Settlement Website also has a "Contact Us" page, whereby Class Members can send an email with any additional questions to a dedicated email address, info@SLTDataSettlement.com. As of August 5, 2024, the Settlement Website has received 10,839 website visits by 9,087 unique users totaling 21,167 pageviews. *Id*.

Angeion also established a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the Settlement. On April 4, 2025, Angeion

---

[4] 40,637 initial mailings, minus the 5,862 initial undeliverable notices, plus the 5,774 remailings equals 40,549.

[5] FED. JUD. CTR., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%. *See also* Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010) (noting 70% is the "norm").

activated the following toll-free number dedicated to this Settlement: 1-855-511-4099. *Id.* ¶ 13. The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline is accessible 24 hours a day, 7 days a week.

In sum, the Notice Program was highly successful.  As experts in the field of notice and claims administration, Angeion opines that the Notice program implemented in this Settlement provided full and proper notice to Settlement Class Members before the claim form, exclusion, and objection deadlines, and that notice provided was the best notice practicable, fully comporting with due process and Fed. R. Civ. P. 23. Angeion Decl. ¶ 17. Plaintiffs submit the highly successful Notice Program implemented pursuant to the Settlement meets the requirements of due process and Federal Rule of Civil Procedure 23 and should be finally approved.

## IV.    CLASS RESPONSE AND CLAIMS

The Settlement has been well-received by the Settlement Class. Settlement Class Members had until July 7, 2025, to submit a claim. *Id.* ¶ 14. As of August 5, 2025, Angeion received 1,218 Claim Forms *Id*. This equates to a claims rate of approximately 2.997%. Angeion is still in the process of reviewing and validating Claim Forms. *Id.*

This nearly three percent claims rate meets or exceeds the claims rates in many comparable data breach settlements finally approved by federal courts. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class). This is supported by the chart below:

| Case | Claims Rate |
|---|---|
| *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) | 0.23% |

| | |
|---|---|
| *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022 WL 2063864, at *10 (S.D.N.Y. June 8, 2022) | 0.25% |
| *Corona v. Sony Pictures Entmt., Inc.*, No. 2:14-cv-9600 (C.D. Cal. Apr. 12, 2016), ECF Nos. 164, 166 | 0.7% |
| *Cochran, et al. v. The Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.), ECF Nos. 104, 115 | 1% |
| *Hogsed, et al. v. PracticeMax, Inc.*, No: 2:22-cv-01261 (D. Ariz), ECF Nos. 43, 45 | 1.28% |
| *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) | 1.8% |
| *Sanders, et al. v. Ibex Global Solutions, Inc.*, No, 1:22-cv-00591 (D.C.) | 2.0% |

As of August 5, 2025, Angeion has received one timely request for exclusion, one untimely request for exclusion, and no objections. *Id*. ¶¶ 15-16 . Such a low objection rate strongly supports a finding that the Settlement is "fair and reasonable." *See, e.g.*, *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (granting final approval of settlement with 25 objections & finding the fact that "99.9% of class members have neither opted out nor filed objections to the proposed settlements … is strong circumstantial evidence in favor of the settlements.").

V.    **LEGAL ARGUMENT**

A.  **Final Class Certification for Settlement Purposes is Appropriate.**

On February 20, 2025, this Court provisionally found that the Settlement Class met the requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—and the requirements of Rule 23(b)—predominance and superiority. Doc. 60. Since

8

this Order, there have been no developments that would alter this preliminary finding. The Settlement Class should now be finally certified for settlement purposes.

### B. The Rule 23(a) Requirements Remain Satisfied.

*Numerosity.* Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017); *ee also Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333, n.9 (7th Cir. 1969) (similar). Here, there are approximately 40,637 Settlement Class Members. Angeion Decl. ¶ 8. Joinder is therefore impracticable and the Settlement Class satisfies the numerosity requirement.

*Commonality.* The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "there are numerous common contentions capable of class wide resolution" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 922 (N.D. Ill. 2022) (cleaned up). Indeed, common questions include (i) whether Defendant owed and breached a duty to exercise due care in collecting, storing, and/or safeguarding Plaintiffs' and Settlement Class Members' Private Information (ii) whether Defendant knew or should have known that it allegedly did not employ reasonable measures to keep the Private Information of Plaintiffs' and Settlement Class Members' secure; and; (iii) whether Defendant violated the law by allegedly failing to promptly notify Plaintiffs and Settlement Class Members that their Private Information had been potentially compromised. Thus, the commonality requirement is met.

*Typicality*. Plaintiffs satisfy the typicality requirement under Rule 23 because their claims based on Defendant's alleged failure to protect Plaintiffs' and Settlement Class Members' Private Information are coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (upholding typicality finding). Plaintiffs allege that their Private Information was compromised and that they were impacted by the same inadequate data security that harmed the Settlement Class. *See Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (explaining that where defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met"). As such, typicality is met.

*Adequacy*. The adequacy requirement is satisfied where (i) there are no antagonistic interests between the named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021). Here, Plaintiffs are members of the Settlement Class who allegedly experienced the same injuries and seek, like other Settlement Class Members, compensation for Defendant's alleged data security shortcomings. Plaintiffs have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. Accordingly, the adequacy requirement is satisfied.

### C.  The Rule 23(b)(3) Requirements Remain Satisfied.

Plaintiffs also seek to certify the Settlement Class, for settlement purposes only, under Rule 23(b)(3) which has two components: (i) predominance and (ii) superiority. Fed. R. Civ. P. 23(b)(3).

Pursuant to Rule 23(b)(3), the Court must find that common questions of law or fact predominate over individual questions and that a class action is a superior method for the fair and efficient resolution of the matter. *Id.*

       1.      ***Predominance.*** The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As discussed above, common questions predominate over any questions affecting only individual members. Plaintiffs' claims are based on Defendant's uniform conduct related to a Data Breach that affected all Settlement Class Members in a similar manner. Plaintiffs' claims depend on whether Defendant used reasonable data security to protect their Private Information. That question can be resolved, for settlement purposes, using the same evidence for all Settlement Class Members, and therefore, makes class-wide settlement appropriate. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)") (cleaned up); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 926 (finding predominance in data privacy case).

       2.      ***Superiority***. Furthermore, class-wide resolution is the most practical method of addressing the alleged violations in this case. While the total economic harm caused by the Data Breach is significant, each individual claim is small compared to the costs of litigating it separately. There are thousands of Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See, e.g.*, *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) ("Where, as here, a group of consumers typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure, class actions are superior to individual

litigation."). Because the claims are being certified for purposes of settlement, there are no issues

with manageability and resolution of thousands of claims in one action is superior to individual

lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620.

("Confronted with a request for settlement-only certification, a district court need not inquire

whether the case, if tried, would present intractable management problems").

In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be

certified. Adjudicating individual actions here is impracticable—the amount in dispute for each

class member is small, the technical issues involved are too complex, and the required expenses

costly. Thus, the Court may finally certify the Class for settlement.

### D.  The Settlement Agreement Warrants Final Approval.

A class action settlement may only be approved after a hearing and a finding that the

settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). *Hayes v. Thor Motor*

*Coach, Inc.*, No. 3:19-CV-375 DRL-MGG, 2022 WL 4137227, at *2 (N.D. Ind. Jan. 13, 2022).

The Seventh Circuit Court of Appeals has characterized the Court's role as that of a fiduciary to

the class members in considering whether a settlement is fair and reasonable. Id., citing *Wong v.*

*Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014).

To determine whether a settlement is fair, adequate, and reasonable the Court considers the

following factors:

> (A) the class representatives and class counsel have adequately represented the
> class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the
> > class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of
> > payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).These considerations overlap with the factors articulated by the Seventh Circuit prior to the amendment of Rule 23 in 2018 which include: (i) the strength of plaintiffs' case compared to the terms of the settlement; (ii) the complexity, length, and expense of continued litigation; (iii) the amount of opposition to the settlement; (iv) the presence of collusion in gaining a settlement; and (v) the stage of proceedings and amount of discovery completed. *See Hale v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1287054, at \*12–13 (S.D. Ill. Mar. 28, 2013) (citations omitted). Under these factors, approval of the Settlement is warranted.

### a. Fed. R. Civ. P. 23(e)(2)(A): Class Representatives & Class Counsel have Adequately Represented the Settlement Class.

Class Counsel have ample experience litigating data breach class actions and are well-versed in the legal claims and risks of this case. As explained in Gary M. Klinger's Declaration submitted with Plaintiffs' Unopposed Motion for Preliminary Approval, Class Counsel worked diligently to advance Plaintiffs' and Settlement Class Members' interests. *See* Doc. 59-2. Prior to reaching the Settlement, Class Counsel researched and drafted the complaints, conducted extensive research regarding Plaintiffs' claims, Defendant, and the Data Incident, consolidated the cases and filed a Consolidated Complaint, reviewed informal discovery, participated in a court-ordered settlement conference with the Court's magistrate judge (the Hon. Joshua Kolar), fully briefed a motion to dismiss, and engaged in months of arm's length settlement negotiations. *Id.*; *see also T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at \*11 (N.D. Ill. Mar. 25, 2022) (granting final approval where "[t]he parties engaged in substantial informal discovery and information sharing over a five-month period"); Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement

negotiations); *id*. § 11.423 (courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery"). The procedural history of the case supports finding that Plaintiffs and the Settlement Class were adequately represented.

Plaintiffs are also adequate representatives of the Settlement Class. Plaintiffs' interests are coextensive with the interests of the Settlement Class. Here, as discussed *supra*, Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. Accordingly, they have every incentive to vigorously pursue the claims of the Settlement Class as they have done to date by remaining actively involved in this Action since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. This factor favors final approval.

### b. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, No. 1:08-CIV-1880, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, No. 1:08-CIV-1880, 2011 WL 13266498 (N.D. Ill. June 1, 2011).This presumption is applicable here because the Settlement resulted from good faith, arm's-length negotiations that included the Court-ordered January 29, 2024 Settlement Conference with Magistrate Judge Kolar and numerous telephone conferences between experienced counsel with a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. This Settlement was reached only after informal discovery and meticulous investigation of the Data Breach. This factor supports final approval of the Settlement.

14

### c.    Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief.

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

The Settlement provides for substantial monetary relief (a $550,000 non-reversionary common fund), as well as equitable relief in the form of business practice commitments. All Settlement Class Members are eligible to submit a claim to have their documented out-of-pocket Losses reimbursed up to $4,000.00; submit a claim for two years of one-bureau credit monitoring; and receive a *pro rata* share of the amounts remaining in the Settlement Fund after all costs and expenses are paid (in lieu of making an out-of-pocket loss claim). Those *pro rata* payments are currently estimated to be between $220 and $230, depending upon whether or not Settlement Class Members who claimed out-of-pocket losses cure their current deficiencies or not. This amount is a substantial per Claimant recovery, exceeding most other data breach settlement cash payments.

In addition, California Class Members can claim a $100 cash payment in recognition of their California statutory claims. Settlement Class Members will further benefit from equitable relief in the form of Defendant of a one-year commitment to information security practices designed to ensure Settlement Class Members information is better protected in the future.

The value achieved through the Settlement is guaranteed, whereas the chances of prevailing on the merits are uncertain.

      1.    Fed. R. Civ. P. 23(e)(2)(C)(i): the Costs, Risk, and Delay of Trial and Appeal Favor Final Approval.

The considerable litigation risks present here weigh in favor of final approval. Although Plaintiffs believe in the merits of their claims, success is not guaranteed. Should litigation continue, Plaintiffs face significant risks. Data breach cases are complex, with novel issues and evolving laws posing hurdles even at the pleading stage. *See e.g., Hashemi v. Bosley, Inc.*, 2022 WL 18278431, at *28 (C.D. Cal. Nov. 21, 2022) (explaining that in data breach class actions damages methodologies are largely untested and have yet to be presented to a jury). In this case, there is a pending motion to dismiss on the pleadings that has yet to be resolved.

Class certification is another hurdle—and one that has been denied in other data breach cases. *See e.g., In re Blackbaud, Inc., Customer Data Breach Litig*., 2024 WL 2155221 (D.S.C. May 14, 2024). While Plaintiffs and Class Counsel believe that the Action is appropriate for class treatment, the outcome of a contested class certification motion and future appeals of a certification order via Rule 23(f) are far from certain.

To emphasize this point, the Court need only look at two very high profile data breach cases: *In re Brinker Data Incident Litig*., No. 3:18-cv-686-TJC-MCR (M.D. Fla.) and *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig*., No. 19-md-2879 (D. Md.). In both cases, plaintiffs were forced to re-litigate standing; partially lost *Daubert* motions to exclude some of their expert damages models supporting the motions; had the courts narrow the class definitions in order to grant any certification of a class; had the courts reject class certification of some of the claims and classes; and faced numerous, very serious issues on damages calculations, predominance and causation. *See Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *13 (M.D. Fla. Apr. 14, 2021) (noting that "if it becomes obvious at any time that the calculation of damages (including accounting for multiple data breaches) will be overly burdensome or individualized, the Court has the option to decertify the class"), vacated in part and

16

remanded *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023), *Theus v. Brinker Int'l, Inc.*, No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification on negligence claim on remand); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *24 (D. Md. May 3, 2022) (approving only the overpayment damages theory where the information necessary to calculate damages is "objective and administrative in nature" and holding if the individual inquiries metastasize to an impermissible level, the court could modify the order, create subclasses, bifurcate liability and damages or decertify the class). Moreover, even if the class was certified, there is always the risk or possibility of decertification. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023) (decertifying classes and remanding), *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023) (recertifying class on remand), *Maldini v. Marriott Int'l, Inc.*, No. 24-1064, 2025 WL 1560372, at *1 (4th Cir. June 3, 2025) (reversing certification a second time).

Further, if litigation were to continue, Defendants would continue to vigorously defend the case and the litigation could potentially span for years. The risks of continued litigation here are at the highest level and there is a genuine possibility that Plaintiffs could have failed to establish liability, damages and class certification through summary judgment and trial. Considering all of this, Plaintiffs' likelihood of success at trial is not certain. Considering these risks, the $550,000 non-reversionary Settlement Fund is a substantial recovery for the Settlement Class. The Settlement benefits are fair, adequate, and reasonable compared to the range of possible recovery.

### 2. Fed. R. Civ. P. 23(e)(2)(C)(ii): Method of Providing Relief is Effective.

Under Rule 23(e), "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in

determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members needed only to complete a simple Claim Form to opt into a *pro rata* cash payment and identity theft protection and reimbursement for out-of-pocket losses with documentation supporting any claimed losses.

Settlement Class Members were able to submit claims online or through the mail. Angeion Decl. ¶ 12. The Claims Administrator, Angeion, is an experienced and nationally recognized class action administration firm. *Id*. ¶ 3. This procedure is claimant-friendly, efficient, cost-effective, and reasonable under the particular circumstances of this case. This is evident by the number of claims received by Angeion. As of August 5, 2025, Angeion has received 1,218 claims from Settlement Class Members, which equates to a claims rate of 2.997 percent. As discussed above, this compares favorably with claims rates observed in other data breach class action settlements. Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

3. Fed. R. Civ. P. 23(e)(2)(C)(iii): Proposed Award of Attorneys' Fees is Fair and Reasonable.

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorneys' fees, including timing of payment." In accordance with Rule 23(e) and the Settlement Agreement, Class Counsel filed a motion seeking $183,333.33, or one-third (33.33%) of the Settlement Fund, and $2,797.49 as reimbursement for litigation expenses. This fee and expense request falls in line with other awards in data privacy cases as discussed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. *See* Doc. 62.

4. Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements.

As no additional agreements requiring identification exist, this factor does not weigh in favor of or against final approval.

>    **d.  Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably.**

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between any members of the Settlement Class. All Settlement Class Members are eligible to submit a claim for the following: documented out-of-pocket Losses up to $4,000.00; two years of one-bureau credit monitoring; and a *pro rata* share of the amounts remaining in the Settlement Fund after all other costs and expenses are paid (in lieu of the out-of-pocket losses). While California Class Members may claim an additional $100, this is an appropriate distinction for this discrete subclass, in recognition of their superior statutory rights. Plaintiffs seek Service Awards of $2,000 each, which is less than any Settlement Class Member may claim in out-of-pocket losses, demonstrating that the Class Representatives are not receiving preferential treatment. These requested awards are well within the range that Courts within the Seventh Circuit routinely approve. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (finding "a $5,000 reward is justified based on Kolinek's role working with class counsel, approving the settlement agreement and fee application, and volunteering to play an active role if the parties continued litigating through trial"); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., 2012 WL 651727, at * 16 (N.D. Ill. Feb. 28, 2012) (approving $25,000 service awards).

All of the Rule 23(e) factors weigh heavily in favor of final approval, and the Court should not hesitate to grant final approval here.

## VI.    <u>CONCLUSION</u>

Because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully

request that the Court grant final approval of class action settlement and enter the proposed Order.

Dated: August 11, 2025                           Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

M. Anderson Berry
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829
aberry@justice4you.com

Kathleen A. Delaney (#18604-49)
**Delaney & Delaney LLC**
3646 North Washington Blvd.
Indianapolis, IN 46205
Telephone: (317) 920-0400
kathleen@delaneylaw.com

Mason Barney
Tyler Bean
**Siri & Glimstad LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: 212.532.1091
tbean@sirillp.com

*Counsel for Plaintiffs and the Settlement Class*

20

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on August 11, 2025 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Gary M. Klinger*
Gary M. Klinger
